UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————
JEROME GOUVEIA,
                        Plaintiff,

                -v-

MOUNT SINAI HEALTH SYSTEMS,
INC., *et al.*,
                        Defendants.
———————————————————————

21-CV-8710 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

    Plaintiff Jerome Gouveia brings this discrimination suit against his former employer, Mount Sinai Health Systems, Inc. ("Mount Sinai" or "the hospital"); his former co-worker, Juliana Guiney; and his former supervisors, Gary Oldenburg and Anatoly Veksler. Gouveia asserts claims of racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); the New York State Human Rights Law, N.Y. Exec. Law §§ 290-297 ("NYSHRL"); and the New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101-103 ("NYCHRL"). Pending now is Defendants' motion for summary judgment. For the reasons that follow, that motion is granted.

## I. Background

### A. Factual Background

    The following facts are undisputed except where otherwise noted. Defendant Mount Sinai is a hospital in New York City. Mount Sinai maintains policies prohibiting unlawful discrimination and retaliation. Defendant Juliana Guiney is the nurse manager of the Pediatric Intensive Care Unit (PICU) at the hospital. Defendant Gary Oldenburg is the director of

respiratory care services at Mount Sinai.  Defendant Anatoly Veksler is the hospital's associate director of respiratory care services.

Plaintiff Gouveia, a Black man, was employed as a respiratory therapist at Mount Sinai between February 2014 and December 2019.  He became a full-time staff member in 2017 and also joined the union at that time.  It is undisputed that Gouveia was well qualified for his job.

### 1. The June 2019 Incident

On June 7, 2019, Gouveia noticed that the food he had placed in the communal refrigerator in the PICU staff lounge was missing.  Defendants allege that there was a sign on the refrigerator stating that unlabeled food would be thrown away weekly.  Plaintiff alleges that he never saw such a sign.  It is undisputed that Plaintiff did not label his food with his name and date.  Gouveia questioned the four individuals in the lounge, and in response, Lynn Muzinic, a nurse, stated that she had cleaned the refrigerator.  Plaintiff alleges that Muzinic has a history of racist statements toward Black employees that made them feel unwelcome in the staff lounge.  He also alleges that Muzinic threw out only his food and left the white employees' meals untouched.  Defendants claim that Gouveia became very upset with Muzinic and that she offered to buy him lunch.

Later that day, Muzinic reported her interaction with Gouveia to Defendant Guiney, who was the nurse manager of the PICU and Muzinic's supervisor.  Gouveia also went to speak with Guiney to report Muzinic's actions.  Ryan Blanc, an assistant nurse manager, was also present for this conversation.  Defendants allege that during this conversation, Gouveia became very upset and used profanity.  Afterwards, Guiney and Blanc reported this conversation to Defendant Oldenburg, who is director of respiratory care services.  Gouveia, Guiney, and Blanc all provided statements to Oldenburg.  Guiney stated that she felt Gouveia's tone and anger were unjustified and that his behavior was insubordinate and disrespectful.  Blanc stated that he felt he needed to

stay in the office because Guiney felt intimidated. In an email to Oldenburg, Gouveia denied directing profanity toward Muzinic. Gouveia also alleges that he complained to Oldenburg about disparate treatment based on race and poor race relations at the hospital. Following the investigation, the hospital issued Gouveia a first warning on June 12, 2019, for the use of vile, intemperate, or abusive language and for insubordination. (ECF No. 35-1 at 46.)

### 2. The November 2019 Incident

On November 23, 2019, a six-month-old baby's tracheostomy ("trach") tube became dislodged, and the child went into respiratory arrest. A nurse caring the patient asked for Gouveia's help, but Gouveia refused, stating, "I don't do trach care." (ECF No. 41 ¶ 38; ECF No. 35-1 at 66.) The patient's parents, who witnessed the interaction, requested a meeting with Defendant Guiney to complain about Gouveia's refusal to help.

Following the incident, Gouveia spoke with his co-worker, Amy Chan, and asked her about the policy for trach care. Defendants allege that, after Chan responded that she was unsure of the exact policy, Gouveia continued to ask Chan what the policy was, over the course of five to seven minutes, becoming aggressive and hostile. Gouveia allegedly yelled at Chan and stated that he had trained her and had never signed her off for trach care. Defendants allege that Gouveia then directed his hostile questioning toward another co-worker, Damian Torres, who was also present for the conversation. Plaintiff allegedly called Chan and Torres "wild cowboys" and stated that he hoped Torres did not have kids because Torres is only at work to collect a paycheck and does not care if his patients live or die. (ECF No. 38-5; ECF No. 41 ¶¶ 35-49.)

Chan and Torres subsequently reported this conversation to Defendant Veksler, the associate director of respiratory care at Mount Sinai. During this conversation, Chan became upset and began to cry, and Torres told Veksler that Gouveia had insulted and yelled at Chan.

3

Veksler reported the conversation to Defendant Oldenburg, who conducted an investigation of the incident. Following the investigation, the hospital issued Gouveia a final warning on December 3, 2019, for exhibiting intimidating, aggressive, and hostile behavior toward his co-workers.

### 3. The December 2019 Incident

On December 3, 2019, the same day the hospital issued the final warning, a patient's father approached Gouveia, who was sitting at the Business Associate desk. What happened next is contested by the parties.

Security footage confirms that the patient's father approached Gouveia at the desk, but the video contains no audio. Defendants allege that the father asked Gouveia what room his son was in. After failing to find his son, the father returned to Gouveia to ask for help. Defendants allege that Gouveia then asked the patient's father if he was "a crackhead." (ECF No. 41 ¶ 76.) Afterwards, the patient's father complained to Blanc about this interaction and described the man at the desk as a big man in blue scrubs with a beard. After hearing the father's complaint, Blanc went to desk and saw Gouveia sitting there. Plaintiff has stated that he does not recall an interaction with the patient's father and denies making the offending remarks. After an investigation, the hospital terminated Gouveia's employment on December 6, 2019.

### 4. The Arbitrations

On October 8, 2020, Arbitrator Roy N. Watanabe held a hearing to arbitrate the union's grievance of the final warning Gouveia received for the November 2019 incident. Under the terms of the union's collective bargaining agreement (CBA) with the hospital, the arbitration was administered by the American Arbitration Association and was final and binding. Following the hearing, Arbitrator Watanabe found that "Gouveia's behavior . . . was fairly viewed by colleagues and management as hostile . . . and detrimental to hospital operations, as charged."

(ECF No. 35-1 at 64-65.)  Consequently, the arbitrator concluded there was just cause for Gouveia's final warning and upheld the hospital's decision.

On April 19, 2021, a second arbitrator, Bonnie Siber Weinstock, held a hearing on the union's grievance of Gouveia's termination.  This hearing, conducted pursuant to the union's CBA, also was final and binding.  Following the hearing, Arbitrator Weinstock found that Gouveia did make the offending remarks to the patient's father and that there was just cause for Gouveia's termination, which the arbitration upheld.  (ECF No. 35-1 at 79-82.)

### B. Procedural History

Gouveia filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 29, 2020.  On July 22, 2021, the EEOC issued Gouveia a right to sue notice, and Gouveia filed this action on October 22, 2021.  On December 3, 2021, Gouveia filed an amended complaint.  The Amended Complaint asserts eleven claims for relief: (1) discrimination under Title VII; (2) retaliation under Title VII; (3) discrimination under Section 1981; (4) retaliation under Section 1981; (5) discrimination under the NYSHRL; (6) aiding, abetting, inciting, compelling, and coercing discrimination under the NYSHRL; (7) retaliation under the NYSHRL; (8) discrimination under the NYCHRL; (9) aiding, abetting, inciting, compelling, and coercing discrimination under the NYCHRL; (10) retaliation under the NYCHRL; and (11) employer liability for discrimination under the NYCHRL.  (FAC ¶¶ 61-104.)

On January 6, 2022, Defendants filed an answer, and the case was referred to mediation, which was unsuccessful.  Defendants moved for summary judgment on December 19, 2022.  Plaintiff filed an opposition on February 8, 2023, and Defendants filed a reply in support of their motion on March 1, 2023.

## II. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *WWBITV, Inc. v. Vill. of Rouses Point*, 589 F.3d 46, 49 (2d Cir. 2009) (internal quotation marks and citation omitted).

In determining whether there is a genuine issue of material fact, the Court must view all facts "in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). The moving party, however, "may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223-24 (2d Cir. 1994). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Id.*

Courts must be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). And "[b]ecause direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Id.* (internal quotation marks and citation omitted). Nonetheless, "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination

cases than to . . . other areas of litigation." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (internal quotation marks and citation omitted). Thus, even in the context of a discrimination case, "a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment," *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), and may not rely solely upon "their own self-serving testimony," *see Deebs v. Alstom Transp., Inc.*, 346 F. App'x 654, 656 (2d Cir. 2009) (summary order). "Where it is clear that no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment should be granted." *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quoting *Gallo*, 22 F.3d at 1224).

## III.   Discussion

### A.   Discrimination

In considering summary judgment in Title VII and Section 1981 cases, the Second Circuit has instructed lower courts to "analyze race discrimination claims under the three-step *McDonnell Douglas* burden-shifting framework." *Fletcher v. ABM Bldg. Value*, 775 F. App'x 8, 12 (2d Cir. 2019) (summary order) (collecting cases). At the first step, "an employee must present a prima facie case of race discrimination." *Id*. If Gouveia carriers his burden of establishing a prima facie case, then, at step two, the "burden shifts to the [Defendants] to give a legitimate, non-discriminatory reason for its actions." *Id.* (quoting *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014)). If the Defendants establish a legitimate, nondiscriminatory reason for their actions, the Court must grant them summary judgment unless, at step three, Gouveia carries "the burden of 'show[ing] that the employer's explanation is a pretext for . . . discrimination'" against a protected class. *Id.* (quoting *Kirkland*, 760 F.3d at 225).

At step one, Gouveia must present a prima facie case that he experienced race discrimination. To establish his prima facie case, Gouveia must demonstrate "that (1) he belongs

to a protected group; (2) he was qualified for his position; (3) his employer took an adverse action against him; and (4) the adverse action occurred in circumstances giving rise to an inference of race discrimination." *Kirkland*, 760 F.3d at 225 (citing *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)).

Defendants do not contest the first three elements and challenge only the fourth, arguing that Gouveia has failed to adduce evidence "support[ing] an inference of discrimination." (ECF No. 40 at 12.) Defendants rely upon *Collins v. N.Y.C. Transit Authority*, 305 F.3d 113 (2d Cir. 2002), to argue that a decision by an independent arbitrator, which is based on substantial evidence, should be highly probative of the absence of discriminatory intent. (ECF No. 41 at 11.) This Court agrees.

*Collins* concerned the effect of binding arbitration pursuant to a CBA on a Title VII claim. In reviewing a grant of summary judgment in favor of the defendants, the Second Circuit held that while "a plaintiff's burden of establishing a prima facie case in the context of employment discrimination law is minimal," the plaintiff could not meet "even this low threshold, because the circumstances of his termination do not give rise to or support an inference of discrimination or retaliation." 305 F.3d at 118 (internal quotation marks and citation omitted). In *Collins*, the plaintiff followed a CBA-established grievance procedure that ended in "a decision, based on substantial evidence, of an undisputedly independent, neutral, and unbiased adjudicator that had the power to prevent the termination," a fact that the court found to be "highly probative of the absence of discriminatory intent in that termination." *Id*. at 119 (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 60 n.21 (1974)). "Where an employee's ultimate termination depends upon, and is allowed by, a decision of an independent and unbiased arbitrator based on substantial evidence after a fair hearing, the arbitration decision has probative

8

weight regarding the requisite causal link between an employee's termination and the employer's illegal motive." *Id*. at 115.  "In sum," the Second Circuit concluded:

> [A] negative arbitration decision rendered under a CBA does not preclude a Title VII action by a discharged employee.  However, a decision by an independent tribunal that is not itself subject to a claim of bias will attenuate a plaintiff's proof of the requisite causal link.  Where, as here, that decision follows an evidentiary hearing and is based on substantial evidence, the Title VII plaintiff, to survive a motion for summary judgment, must present strong evidence that the decision was wrong as a matter of fact—e.g. new evidence not before the tribunal—or that the impartiality of the proceeding was somehow compromised.

*Id*. at 119 (citation omitted).

The Second Circuit later reaffirmed that *Collins* applies to "[d]iscrimination claims . . . brought in federal court after being submitted to binding arbitration pursuant to a collective bargaining agreement."  *Cortes v. MTA New York City Transit*, 802 F.3d 226, 232-33 (2d Cir. 2015).  In such cases, Title VII plaintiffs must "meet the burden established by *Collins* . . . to survive a motion for summary judgment or at trial."  *Id*. at 233.

Gouveia fails to meet his burden here.  First, he does not offer any arguments undermining the impartiality of the arbitration proceedings.  Nor could he.  Both hearings were held pursuant to the terms of the CBA between Gouveia's union and the hospital.  Neutral arbitrators, selected in accordance with the rules of the American Arbitration Association, presided.  Both parties were represented by counsel and given full opportunity to introduce evidence and present argument.  The arbitrators considered the evidence and arguments presented, which they comprehensively summarized in lengthy opinions.  There is no evidence that Arbitrator Watanabe and Arbitrator Weinstock were anything other than "undisputedly independent, neutral, and unbiased."  *Collins*, 305 F.3d at 119.

Second, Gouveia's arguments that Arbitrator Weinstock's decision was wrong as a matter of fact are unpersuasive.  He asserts that Arbitrator Weinstock "failed to take a step back to

9

understand the sequence of events" leading up to Gouveia's final warning and termination. (ECF No. 44 at 16.) But the arbitration opinion makes clear that the evidentiary record considered in the proceedings encompassed Gouveia's full prior disciplinary record, including the events that led to his first warning on June 12, 2019 and his final warning on December 3, 2019. (ECF No. 35-1 at 81.)

Gouveia also claims that the arbitrator "failed to consider that there was absolutely no corroborating evidence" of the alleged incident with the patient's father that led to his termination. (ECF No. 44 at 16.) Instead, Gouveia offers the theory that Defendant Guiney "spearheaded the patient's father's allegation" as part of a "conspiracy against Gouveia." (*Id*.) The strength of Arbitrator Weinstock's findings and conclusions refutes these arguments. The opinion carefully considered and weighed the evidence, including the video of the incident and the corroborating testimony of three witnesses. Arbitrator Weinstock found that these witnesses—including Defendant Guiney—"testified clearly and credibly" and had "no motive to fabricate." (ECF No. 35-1 at 79.) Notably, the opinion found that Defendant Guiney spoke with the patient's father only the day after the incident—and only after the father initially brought his complaint to Glynda Guia-Johnson, a nurse, and Ryan Blanc, an assistant nurse manager. (*Id*. at 75-77.) The arbitrator found that the testimony of Blanc, who heard the father's complaint within minutes the incident, was "clear, concise and credible." (*Id.* at 76.) Blanc had "no animus" toward Gouveia nor "any interest in the outcome of this proceeding." (*Id.*) Moreover, the arbitrator found "no reason or motivation for the father to have fabricated his interaction with the [plaintiff]." (*Id*.) On the strength of this evidence, Arbitrator Weinstock found that Gouveia made the offending remarks and violated the hospital's rules of conduct, thereby justifying his termination. (*Id.* at 78-79, 82.) Given the arbitration opinion's basis in substantial evidence, its

undisputed impartiality, and the absence of new evidence that would render the decision erroneous as a matter of fact, this Court concludes that the arbitration decision is highly probative of an absence of discriminatory intent.

Gouveia, however, argues that the arbitration opinion should be given no weight and that *Collins* should not apply because Gouveia "did not fully present claims of discrimination and retaliation to Arbitrator Weinstock during his arbitration." (ECF No. 44 at 15.) Courts in this District have rejected this argument in similar cases. *See Gallimore-Wright v. Long Island R.R. Co.*, 354 F. Supp. 2d 478, 491-92 (S.D.N.Y. 2005); *Watton v. Cnty. of Rockland*, No. 16-CV-571, 2018 WL 3632523, at *6 (S.D.N.Y. July 27, 2018). As Judge Kaplan has observed:

> There is no suggestion in *Collins* that the plaintiff had presented his evidence of discriminatory and retaliatory intent to the arbitrator. Certainly the Circuit did not rely on any findings by the arbitrator with respect to any such claims. And this makes good sense in light of what the Circuit did say. Its point was that the arbitration decision finding that the plaintiff . . . was properly terminated was strong evidence of a lack of retaliatory or discriminatory intent which, in the absence of any meaningful proof to the contrary, prevented the plaintiff from making out a *prima facie* case.

*Gallimore-Wright*, 354 F. Supp. 2d at 492. This Court similarly concludes that Gouveia's assertion that he did not fully present his discrimination claims does not affect the *Collins* analysis, which requires the plaintiff to present strong evidence that the arbitration decision either was wrong a matter of fact or was itself biased. Plaintiff has failed to do so.

Finally, Gouveia argues that he can establish an inference of discrimination because he was treated less favorably than similarly situated employees. Specifically, Gouveia alleges that white employees at the hospital have "received far more lenient discipline even in the face of severe misconduct." (ECF No. 44 at 14.) The record reveals, however, that Gouveia's allegation is based on admittedly second-hand rumors about the lenient discipline allegedly received by one white employee (ECF No. 35-1 at 33-36)—rumors that are debunked by the hospital's

11

employment records (ECF No. 38 ¶ 11, Ex. 10).  This Court concludes, therefore, that there is no triable issue of fact and that Plaintiff's speculative and unsupported allegations do not give rise to an inference of discrimination.  *See Rogers v. Bank of N.Y. Mellon*, No. 09-CV-8551, 2016 WL 4362204, at *20-21 (S.D.N.Y. Aug. 15, 2016) (finding that a plaintiff's speculative assertions about disparate discipline, in the absence of personal knowledge of other employees' disciplinary records and identification of comparators who were better treated in similar circumstances, did not create an issue of fact to defeat summary judgment).

Given the strength of the arbitration opinion upholding Gouveia's termination, and the absence of meaningful countervailing evidence of discriminatory intent, this Court concludes that no rational jury would find that Gouveia's termination occurred in circumstances giving rise to an inference of discrimination.  Because Gouveia fails to carry his burden of establishing a prima facie case of discrimination, Defendants are entitled to summary judgment on the Title VII and Section 1981 discrimination claims.  The Court, therefore, need not reach steps two and three in the *McDonnell Douglas* framework.  But assuming *arguendo* that Gouveia has sufficiently presented a prima facie case, this Court concludes—on the basis of Arbitrator Weinstock's careful and thorough opinion and the paucity of Plaintiff's evidence—that the hospital had a legitimate nondiscriminatory reason for Gouveia's termination and that Gouveia has failed to create a genuine dispute of fact with respect to whether the proffered reason was pretext for discrimination.

### B. Retaliation

Like the analysis above, whether raised "[u]nder Title VII [or] § 1981, retaliation claims are generally evaluated under the *McDonnell Douglas* burden-shifting framework." *Fletcher*, 775 Fed. App'x at 14.  Gouveia alleges that Defendants "colluded" in a "deceitful . . . conspir[acy]" to terminate him after he complained about the disparate treatment of hospital

12

employees based on race.  (ECF No. 44 at 12, 14-15.)  This alleged conspiracy involved "creat[ing] a paper trail of disciplinary issues" based on accusations of "exaggerated and false conduct" that ultimately led to the firing.  (*Id*. at 12.)

To satisfy his initial burden on a retaliation claim, Gouveia "must first establish a *prima facie* case of retaliation by showing that: '(1) [he] engaged in a protected activity; (2) [his] employer was aware of the activity; (3) the employer took adverse employment action against [him]; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Gonzales v. NYU Langone Hosps*., No. 18-CV-1797, 2021 WL 4226042, at *5 (S.D.N.Y. Sept. 16, 2021) (quoting *Summa v. Hofstra Univ*., 708 F.3d 115, 125 (2d Cir. 2013)).

Defendants dispute whether Gouveia engaged in protected activity at all, arguing that Gouveia's complaints were directed toward the allegedly poor treatment by nurses of all respiratory therapists and made only one cursory reference to "poor race relations."  (ECF No. 49 at 8.)

But even assuming that the facts, construed in the light most favorable to Gouveia, support the conclusion that Gouveia was engaged in protected activity that was known to the hospital, Gouveia fails to establish the fourth element of his retaliation claim: causation.  "Title VII claims require 'but-for-causation,' *i.e.*, 'proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Gonzalez*, 2021 WL 4226042, at *5 (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)).  Plaintiffs may establish causation either "indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence . . . or [] directly, through evidence of retaliatory animus directed against the plaintiff

13

by the defendant." *Natofsky v. City of New York*, 921 F.3d 337, 353 (2d Cir. 2019) (internal citations omitted).

As with the discrimination claim, *Collins* governs a retaliation claim brought after a negative arbitration decision rendered under the terms of a CBA. Under *Collins,* "a decision by an independent tribunal that is not itself subject to a claim of bias will attenuate a plaintiff's proof of the requisite causal link" between a plaintiff's termination and the protected activity. 305 F.3d at 119. To survive summary judgment, Gouveia "must present strong evidence that the decision was wrong as a matter of fact . . . or that the impartiality of the proceeding was somehow compromised." *Id*. Plaintiff failed to meet this burden with respect to the discrimination claim and similarly fails to do so here.

In his November 9, 2020 opinion, Arbitrator Watanabe considered and weighed the evidence regarding the November 26, 2019 incident that led to Gouveia's final warning for his allegedly threatening and intimating behavior. The arbitrator also considered the facts of the refrigerator incident that led to his first warning, though that incident itself was not the subject of a union grievance. Based on his careful and thorough consideration of the evidentiary record, Arbitrator Watanabe found that "Gouveia's behavior crossed a line, and was fairly viewed by colleagues and management as hostile, or aggressive, or intemperate, or threatening, or intimidating, and detrimental to hospital operations, as charged." (ECF No. 35-1 at 64-65.) Accordingly, the arbitrator concluded that the hospital had just cause to discipline Gouveia and upheld Gouveia's final warning and three-day suspension. (*Id*. at 67, 69.)

Plaintiff offers no evidence that Arbitrator Watanabe lacked impartiality. Like the second hearing in front of Arbitrator Weinstock, the first arbitration was administered by the American Arbitration Association under the terms of the CBA. The parties were represented by

counsel and had a full opportunity to introduce evidence and offer argument.  Arbitrator Watanabe fully considered the evidentiary record and the parties' arguments and submissions in his opinion.

Plaintiff also fails to present strong evidence that the arbitrator's decision was wrong as a matter of fact.  Arbitrator Watanabe's opinion was based on substantial evidence, and Plaintiff offers no new evidence that would render the decision erroneous.  Accordingly, this Court determines that the first arbitration opinion is highly probative of a lack of discriminatory intent motivating Gouveia's first warning—and, therefore, undermines his claims of a conspiracy to manufacture disciplinary issues based on false and exaggerated accusations.  The second arbitration opinion, as discussed earlier in the context of Gouveia's discrimination claim, similarly undermines the causal link between any protected activity and Gouveia's termination.

Based on the strength of the two arbitrators' conclusions, this Court concludes that Plaintiff has failed to establish the requisite causal link between his protected activity and either his first warning or his final warning and termination.  Plaintiff's allegations of a conspiracy to retaliate against him are unsupported, conclusory, and directly refuted by the findings of the two arbitrators.  Plaintiff's evidence, therefore, fails to support a reasonable inference of causation.  But even assuming *arguendo* that Gouveia satisfied his initial burden of establishing a prima facie case of retaliation, he still fails to survive summary judgment.  The two arbitration decisions, along with the absence of meaningful countervailing evidence, support the conclusions that Defendants have produced a legitimate, nonretaliatory reason for Gouveia's termination and that Gouveia has failed to show that that reason was pretextual or that the adverse employment actions would not have occurred but for his protected activities.  Because

Plaintiff has failed to carry his burden under the *McDonnell Douglas* framework, Defendants are also entitled to summary judgment on the Title VII and Section 1981 retaliation claims.

### C.     NYSHRL and NYCHRL

Gouveia's state- and city-law claims are based on the Court's exercise of supplemental jurisdiction.  (*See* FAC ¶ 3.)  After dismissal of Gouveia's Title VII and Section 1981 claims, no federal claims remain.  Under 28 U.S.C. § 1367(c)(3), a court may decline to exercise supplemental jurisdiction over non-federal claims once it has "dismissed all claims over which it has original jurisdiction."  To determine whether to exercise supplemental jurisdiction over the remaining non-federal claims, courts are to consider the "familiar factors of judicial economy, convenience, fairness, and comity."  *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 81 (2d Cir. 2018) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  Where, as here, "all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Cohill*, 484 U.S. at 350 n.7; *see also Lambert v. Trump Int'l Hotel & Tower*, 304 F. Supp. 3d 405, 428 (S.D.N.Y. 2018) ("Courts in this District routinely decline to exercise supplemental jurisdiction over a plaintiff's NYCHRL claims after dismissing all federal claims."); *Karmel v. Liz Claiborne, Inc.*, No. 99-CV-3608, 2002 WL 1561126, at *4 (S.D.N.Y. July 15, 2022) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), . . . it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court.").

Accordingly, the Court declines to exercise supplemental jurisdiction over Gouveia's non-federal claims and dismisses those claims without prejudice to refiling in state court.  *See Cohill*, 484 U.S. at 350.

### IV. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED with respect to Plaintiff's Title VII and Section 1981 claims, and those claims are hereby dismissed with prejudice. The remaining claims under the NYSHRL and NYCHRL are dismissed without prejudice.

The Clerk of Court is directed to close the motion at ECF Number 34, to enter judgment in favor of Defendants, and to close this case.

SO ORDERED.

Dated: September 29, 2023
      New York, New York

_____
J. PAUL OETKEN
United States District Judge